### ESTATE OF CHARLOTTE L. WILLSON, DECEASED.
#### [No. 12,877 (N. S.); April, 1914.]

**Wills—Interpretation of Technical Terms—Testament Drawn by Notary.**—The rule of relaxation in the interpretation of technical words in a will, when the instrument has been drawn by "an unskilled hand," is here discussed in relation to a will drafted by a notary public.

**Wills—Intention of Testatrix—How Ascertainable.**—In interpreting paragraphs of a will the intention of the testatrix must be found in the contest, and it must accord with the law. The question is not what she meant, but what her words mean; and the intention must clearly appear to be lawful.

**Wills—Direct Devise or Void Attempt to Create Trust.**—A devise in this case to the executor of the will as trustee for two designated beneficiaries "and the survivor of them for and during their lifetime" (both of whom predeceased the testatrix), and thereafter to "convey and transfer" the property to certain named persons, is held not a direct devise but a void attempt to create a trust.

**Wills—Meaning of Word "Children."**—In the ordinary and grammatical sense the word "children" implies immediate offspring. This is its natural and primary sense.

**Wills—Canons of Construction—Duty of Courts to Obey.**—In interpreting wills courts are bound to carry out canons of construction, no matter how technical they may seem to those who have not studied their philosophy, and one of these rules is, most imperatively imposed, that courts must stand by the words of the will.

**Wills—Interpretation—Consideration of Extrinsic Evidence.**—In determining the intention of a testatrix the court can consider the circumstances surrounding the execution of the will only when inconsistencies or ambiguities in the language used make the intention as declared by the will doubtful.

**Wills—Interpretation—Bequest to Children.**—In construing the will in this case the court finds that the bequest to "children" in paragraphs 8 and 9 is to be construed as to a class; that it comprehends only those who were living at the death of testatrix; that there is no

ambiguity in the testamentary expression, and the intention of testatrix is therein evident; that upon the decease of testatrix there were and are now persons within the descriptive terms of the will; that the word "children" must be construed and interpreted as "immediate offspring"; and that such persons are entitled to distribution.

Charles E. Wilson, for executor, Milo S. Jeffers.

J. P. Langhorne, for William G. Hawley and others, grandnephews and grandnieces of testatrix.

Clarence G. Atwood, for Margaret S. Hayward and others, devisees.

Parker S. Maddux, for John J. Berry and others, nieces and nephews of testatrix.

COFFEY, J. Charlotte L. Willson died on the 18th of December, 1911, aged about ninety-three years, leaving a last will dated October 30, 1900, admitted to probate in this court, Milo S. Jeffers being appointed executor, and, having fulfilled his function and rendered his final account, he presents a petition for final distribution; to which the persons claiming under the will have filed their respective answers, and upon the issues thereby joined are certain important questions to be resolved which have necessitated much discussion, each of the counsel being confident of the logical and legal rectitude of his own contention and absolutely certain that his was the final word.

The questions are as to the construction of certain parts of the instrument and the shares to which the persons named therein may be entitled.

The statements of the case do not essentially differ; but in order to elucidate the points at variance and the interpretation of terms, the entire document is herein transcribed:

"In the Name of God, Amen.

"I, Charlotte L. Willson of the City and County of San Francisco, State of California, being of sound and disposing mind and memory, do hereby make, publish and declare this

my last Will and testament, revoking and making null and void all other and former Wills by me heretofore made.

"First 1—I give devise and bequeath to Frances Rabe, widow of the late Dr. W. Rabe, of Oakland, Alameda County, California, the sum of Two thousand dollars.

"Second 2—I give devise and bequeath to Mrs. Margaret S. Hayward, wife of Louis Hayward of San Francisco, California the sum of Two thousand dollars.

"Third 3—I give devise and bequeath to Miss Myra S. Jeffers and Miss Eunice C. Jeffers, daughters of the late Milo S. Jeffers, of San Francisco, the sum of Two thousand dollars each.

"Fourth 4—I give devise and bequeath to William Rabe and Louise Rabe Allender, of Oakland, Alameda County, California the sum of five hundred dollars each.

"Fifth 5—I give devise and bequeath to my Executors hereinafter named as Trustees and in Trust for the uses and purposes hereinafter expressed, all that certain lot piece or parcel of land, situate lying and being in the City and County of San Francisco, California, upon which is erected a brick building known and designated as No. 110 Jackson Street, in said City and County of San Francisco, which said real property is owned by me, and the title to which stands in my name.

"The said Trustees shall during the lifetime of Fred Kuhnle and Mary E. Kuhnle his wife (and the survivor of them) of Marin County California, lease rent demise hold manage and control said property to the best of their ability and according to their best judgment and discretion.

"The said trustees shall pay out of the income derived from said property all the expenses of this trust, and of the care and management of said property including repairs, taxes, street assessments and insurance.

"During the lifetime of the said Fred Kuhnle and Mary E. Kuhnle his wife (and the survivor of them) said Executors as such Trustees shall pay to said Fred Kuhnle and Mary Kuhnle, his wife, (and the survivor of them) for their sole use and benefit and for the sole use and benefit of the survivor of them, all of the net rents income and profit of said property. Said payments to be made monthly.

"Upon the death of both of said Fred Kuhnle and Mary E. Kuhnle, said Trustees shall convey and transfer said real property to the persons designated in paragraph nine of this last Will and testament as my residuary legatees and devesees.

"Sixth 6—I give devise and bequeath to my executors hereinafter named, as trustees and in trust for the uses and purposes hereinafter expressed, that certain lot piece or parcel of land situate in the County of Marin State of California; consisting of one parcel of about four hundred and seventy-five acres, which said land was devised·to me by the Will of John Ward Willson my son, and which said tract of land is now owned by me and stands of record in my name.

"That said Trustees shall pay all taxes repairs assessments and insurance on said property and shall grant and give the free use occupancy and enjoyment of the said property as a home, free of all charge and expense to the said Fred Kuhnle and Mary E. Kuhnle and the survivor of them for and during their lifetime. And upon the death of both the said Fred Kuhnle and Mary E. Kuhnle his wife said Trustees shall convey and transfer said real property absolutely to Mary S. Hayward, wife of Louis Hayward, Myra M. Jeffers and Eunice C. Jeffers, daughters of the late Milo S. Jeffers and to Allan J. Roy, son of John A. Roy, all of San Francisco California, in equal shares, share and share alike.

"Seventh 7—I give devise and bequeath to Margaret S. Hayward, Myra M. Jeffers, Eunice C. Jeffers and Allan J. Roy of San Francisco Cala in equal shares, share and share alike all those two certain lots now owned by me and standing in my name of record, situate lying and being in the City of Petaluma, Sonoma County, California.

"Eighth 8—In the case of the death of any of my devisees and legatees hereinbefore mentioned before my decease I then give the share of my estate which such devisee or legatee should have received under this Will, in equal proportions, share and share alike, to the children of my brothers George and William W. Goodrich and to the children of my sisters Eliza G. Hawley, Harriet K. Berry and Jane Augusta Berry.

"Ninth 9—I give devise and bequeath to the children of my said brothers and sisters hereinbefore mentioned all the rest,

residue and remainder of my estate of every kind, character and descripton wheresoever situate lying and being.

"Tenth 10—I hereby nominate and appoint my friends Milo S. Jeffers (nephew of the late Milo S. Jeffers), and John A. Roy of San Francisco, California, Executors and trustees of this my last Will and testament, without bonds.

"In witness whereof I have hereunto set my hand and seal this 30th thirtieth day of October, one thousand nine hundred.

"MRS. CHARLOTTE L. WILLSON.

"The foregong instrument consisting of five pages, written upon but one side of the paper, was at the date hereof signed sealed published and declared by the said Charlotte L. Willson to be her last Will and testament, in the presence of us and each of us, who, at her request and in her presence and in the presence of each other have hereunto subscribed our names as witnesses.

"A. WOLF,<br>"San Francisco, Cal.<br>"GEO. T. KNOX,<br>"Notary Public San Francisco, Cal."

The court will first deal with the question as to whom by the terms of the will the testatrix meant to be her beneficiaries under the paragraphs 5 and 6.

In these paragraphs testatrix devised real property to her executors in trust, giving a life estate therein to Fred Kuhnle and Mary E., his wife, and the survivor. They both predeceased testatrix.

The will was drawn by a notary, who, it is said, was not a lawyer, and some argument is founded upon this assumed fact; and the Estates of Fair and Spreckels are cited as recognizing that a will written by an unskilled hand will receive different interpretation from one drawn by able counsel.

In the Estate of Peabody the will was the work solely of the testatrix, a person unfamiliar with technical terms and unacquainted with the usual formal language of the law:

"Technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention, or unless it satisfactorily appears that the will was drawn

solely by the testator, and that he was unacquainted with such technical sense.''

In the case at bar the document was drawn and attested by an official who may be presumed, by virtue of his calling, to have had some knowledge of technical terms.

Counsel for beneficiaries emphasizes the point that the will here was not drawn by an able lawyer, but by a notary public, and he asks, What effect has this on the construction of the will?

If the court were permitted to indulge any allusion to judicial knowledge of local history it might be observed that the notary was a man of long experience in testamentary transactions and that he was, also, of French extraction and familiar with the forms of a country where a notary is legally the draftsman and depositary of such instruments.

Moreover, he was by profession an attorney and had practiced as such as early as 1856, when he was also a notary and continued to be so engaged for half a century in San Francisco.

George Tempest Knox was no novice as a notary or attorney when he drew this will and attested it. He had performed similar services in hundreds of instances, known to the court and of judicial record. His was a skilled hand.

But this is aside; and the contention is that, not being an able lawyer, but a mere notary, we have a different rule of construction from that which would govern if the document were the product of a professional pen.

In the Peabody case it is laid down that a technical construction of words and phrases, although prima facie the one that should prevail, will not go to the extent of defeating any obvious general intention of the testator, since wills are often prepared by those wholly unacquainted with the precise technical force of legal formulae.

As counsel says, the Peabody will was written by testatrix, who sought to create a trust, and used language for the purpose which, if used by an able lawyer, would probably have been construed as a trust to convey real property and, therefore, void under the rule in the Estate of Fair; but the court interpreted the language as a direct devise, and counsel fur-

ther says that the Fair and Spreckels cases both recognize
that a will drawn by an unskilled hand will receive different
interpretation from one drawn by able lawyers.

Certainly it may be said, without offense, that the supreme
court verified its own remark by its decisions in the two last-
named cases where upon like premises contrary conclusions
were reached. In these two cases the court laid stress upon
the fact that the wills were the product of skilled draftsmen,
unlike the paper in the Peabody case, which came from "an
unskilled hand." Counsel say, however, in the case at bar,
that additional evidence that this Willson will was drawn by
an unskilled hand is found in the inaccurate use of the words
"devise" and "bequeath," for in each of the first four para-
graphs of the will, where gifts of personal property are made,
the word "devise" is used, and the word "bequeath" is used
in paragraphs 5, 6 and 7, where a gift of real property is
made; but the supreme court has said, in the Fair case, where
a "skilled hand,"a legal artisan, so to say, drew the docu-
ment, that such errors made no difference, for technical in-
formalities, or grammatical errors, or words which, in legal
language, are inapt to express the evident intention of the
testator, will be construed as though the proper legal phrase-
ology had been employed; but there must be some language
used to effectuate that which a litigant asserts to have been
the intention of the testator. "Of course the precise tech-
nical word devise is not necesssary; any other word or lan-
guage expressive of the same action or design would be suffi-
cient."

In this case, as in that, the direction is, in a certain event,
to "convey and transfer" in the Willson will, to "transfer
and convey" in the Fair will; a mere transposition of terms,
with the addition here of the word "absolutely" and it is
argued that this added word imports a direct devise.

If it were a matter of original impression this court would
be inclined to agree with this view of counsel; but by this
time it seems to be an established rule to the contrary, no mat-
ter how manifest the intention of testatrix.

This court might say that this rule is highly artificial and
destructive of the design of the testatrix; but that would be

but the opinion of one judge, and there are seven finally to say "nay"; for the legal intendment is that the testatrix does not say what she means but means what she says; for the rule of technical construction is that we must stand by the words of the will. It is not what the testatrix meant, but what her words mean. It is not the spirit, but the letter; so, contrary to the scripture, the spirit is killed and the letter kept alive.

It might be conceded, as counsel contends, that it was the clear intention of testatrix that the property described in paragraph 6 should go to the persons named therein in the contingency contemplated; but the question is, Was the machinery employed adequate to execute the intention?

It was said in the Fair case that frequent invocations had been indulged in that the intention of the testator must prevail; so say we all of us, judges and lawyers and laymen; but the intention must be found in the context; and it must accord with the law. The intention must clearly appear to be lawful. This court agrees with counsel that we should not extend too far the rule of the Fair case; but it is the rule, and the trial courts must be responsive where the facts seem similar, as in this case. This is not a direct devise. The attempted trust is void.

If we assume that the questions already considered as to paragraphs 5 and 6 are correctly decided, we come next in order to 8 and 9; paragraph 7 being noncontentious.

Paragraphs 8 and 9 are short in language, but as to their meaning have led to much discussion.

The issue is presented whether the word "children" as used in the will means immediate issue or remote posterity.

Testatrix left to the children of her brothers George and William Goodrich and to the children of her sisters Eliza G. Hawley, Harriet K. Berry and Jane Augusta Berry the residue of her property.

In the ordinary and grammatical sense the word "children" implies immediate offspring.

This is its natural and primary sense.

In deeds it has been strictly so held unless there be some expressions to show a broader signification.

In wills sometimes its meaning has been extended to effect the obvious intention of the testator, so as to include grandchildren.

There should be expressions in the will to justify such a construction.

According to Webster, child means a son or daughter, a male or female descendant in the first degree; the immediate progeny.

This is the natural and primary sense. A subordinate sense is indicated in the dictionary in the use of the word, "descendants, however remote; used especially in the plural; as the children of Israel; the children of Edom."

Thus we have it that the term is descriptive and limitative of the object of testator's bounty; it is ordinarily a word of description, limited to persons standing in the same relation.

The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained: Civil Code, sec. 1324.

Now, how are we to ascertain what the testatrix meant when she said that, in a certain contingency, she gave to the "children" of her brothers and sisters the interests indicated in her will?

It is said that there seems to be a disposition prevalent to defeat the design of a testator, but how can we learn of the design except through the language? The spirit of the law is to carry out the intention; but, it has been said, in another branch of this case, artificial means are often resorted to to pervert the testamentary purpose and divert the benefaction into a different channel.

Courts, however, are bound to carry out canons of construction, no matter how technical they may seem to those who have not studied their philosophy, and one of these rules is, most imperatively imposed, that we must stand by the words of the will.

"It is not what the testator meant but what the words mean." It is the duty of the court to find out what the words mean.

In this connection, it is said, in one of the very able arguments of counsel, that the court should lean to what is most equitable and consonant with the dictates of justice and the intentions of the testator; and, of two interpretations, that should be accepted which is most agreeable to equity, and he quotes with much force and persuasion from most eminent authorities, including Chancellor Kent and Mr. Justice Story and from other high sources.

This reduces, so far as the authorities cited and quoted are concerned, his contention to this point. Is the will susceptible of one or another interpretation?

Is it true legally, as he contends, that the term "children," as used, includes descendants in the direct lines until it reaches a resting place, however remote, on a basis of absolute equality between members of each class, the children of the members of each class forming a new class to take per stirpes, until the end of time; and that the will clearly exhibits that intention?

Does the will clearly exhibit that intention? Is there any occasion for doubt on the face of the will as to the meaning of the testatrix? In answering these questions we must always keep in sight the rule of construction furnished by our own supreme court.

Counsel contends that in construing the word "children" the court is not confined to the will itself, but can consider evidence showing the circumstances and situation of the parties and testatrix before and at the time of the execution, in order to ascertain the intention, and that these circumstances manifest that testatrix meant by the use of the word "children" the inclusion of the families and descendants of her brothers and sisters, the family or descendants of each brother and sister to take one-fifth of the estate passing under the eighth and ninth paragraphs of her will, per stirpes.

The court, in the exercise of a liberal discretion, as is its custom, in order, if possible, to reach the core of the truth, admitted certain extrinsic evidence, demonstrating great tenderness and affection on the part of testatrix toward her collateral descendants, and it is argued therefrom that the word "children" should not be rigidly or technically construed.

The reception of this testimony was tentative, and upon the assumption, subject to correction, that there was some ambiguity in the will.

If there be no such ambiguity, if the will on its surface is self-explanatory, such testimony should be disregarded in decision. The language of the instrument must control, if it be plain, definite and explicit. No matter what the court may conjecture to have been in the mind of the testatrix, it is bound by the words employed which express the intent to which effect must be given. The inquiry of the court is confined to this point. The circumstances are to be considered only when inconsistencies or ambiguities in the language used make the intention as declared by the will doubtful.

The cases in support of these elementary propositions are almost countless, and the only reason for allusion to them is in respect to counsel on either side who have shown such industry in compiling and discriminating the authorities, which the court has read and reviewed with interest inspired by the diligence of counsel.

The dispute is not devoid of difficulty; indeed, it is a matter of delicate discernment; and, therefore, the court has not hastened to a conclusion, deeming it better to be deliberate in its consideration than precipitate in its decision.

From the premises laid down the court finds:

1. That the bequest to "children" in paragraphs 8 and 9 is to be construed as to a class.

2. That it comprehends only those who were living at the death of testatrix.

3. That there is no ambiguity in the testamentary expression, and the intention of testatrix is therein evident.

4. That upon the decease of testatrix there were and are now persons within the descriptive terms of the will.

5. That the word "children" must be construed and interpreted as "immediate offspring."

6. That such persons are entitled to distribution.

Decree accordingly.

Judgment affirmed by supreme court.